UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(Filed Electronically)

CRIMINAL ACTION NO. 3:19CR-24-JRW
UNITED STATES OF AMERICA,                                    PLAINTIFF,

vs.

KENNETH LLOYD THOMAS,                                        DEFENDANT.

## DEFENDANT'S RESPONSE TO THE UNITED STATES' POST HEARING BRIEF

Comes the Defendant, Kenneth Lloyd Thomas ("Defendant" or, in the alternative, "Mr. Thomas") by counsel, and in support of his Response to the United States' Post Hearing Brief states as follows:

### I.      RELEVANT FACTS

#### A.  The Stop

Defendant was operating a 2006 Maroon Chevy Tahoe in Louisville, Kentucky, on October 4, 2018 at approximately 7:10 p.m. when his vehicle was pulled over by members of the 9th Mobile Unit of the Louisville Metro Police Department.[1]  Members of the 9th Mobile are self-described "gun cops."[2]  According to the body camera videos provided in discovery, the 9th Mobile began following Mr. Thomas as he was turning left from Cane Rune Road, with his turn signal on, through a green arrow light onto Rockford Lane.[3]

---

[1] *See* arrest citation, marked as Defendant's Exhibit 1 to the suppression hearing.
[2] Det. Mayo body camera video, provided pre-hearing by the United States, at 23:09:48.
[3] *See* Det. Flynn's body camera video, provided pre-hearing by the United States, at 22:59:23.  It should be noted that, per the United States' discovery production, this video belongs to Det. Flynn (USA 00018), but in their pre-hearing brief, the United States claims it was Officer Robbins who took the actions that are depicted in Det. Flynn's body camera video.

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

1

1. **Lack of Proof of the Seatbelt Violation.**

It is undisputed that the officers claim the stop of the vehicle was **only** for the a violation of Kentucky's seatbelt law.[4]  Indeed, the arrest citation for Mr. Thomas clearly states that "Det. Observed above, operating listed vehicle, without a seatbelt."[5]  And, Det. Mayo admitted as much at the suppression hearing.[6]  Although the stop was only for a failure to wear their seatbelts, there are no less than seven (7) Detectives on scene while the Defendant and his occupants' information is run by one Detective.[7]

There are no in-car videos of the stop and search of Mr. Thomas' vehicle.  While the United States contends that the "vehicle was stopped facing the sunset and there remained enough daylight for officers to plainly observe"[8] whether the occupants we wearing a seatbelt, the stop occurred at 7:10 p.m. in October and the officers' vantage points at the time of initial visualization and the time prior to the stop is not clear in the body camera videos.  Further, Det. Mayo had no independent recollection of observing the Defendant and his occupants' failure to wear seatbelts while next to the vehicle.[9]  Thus, the only concrete observations of the vehicle are depicted in the body camera videos when the officers were driving behind the Defendant's vehicle.[10]  Even still, the body camera videos clearly demonstrate that even as officers are approaching the vehicle on foot and only a few feet away, there is no clear visual of the interior of the Tahoe due to the

---

[4] Det. Mayo suppression hearing testimony at 10:12-16 and 32:10-14.
[5] Defendant's Exhibit 1.
[6] Det. Mayo testimony, *supra.*
[7] *See* body camera video of Det. Casper, entered as Defendant's Exhibit 3 at the suppression hearing.
[8] United States' Response to Defendant's Motion to Suppress, DN 20.
[9] Det. Mayo suppression hearing testimony at 22:24—24:18.
[10] *Id.*

OFFICE OF THE
**FEDERAL DEFENDER**
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

2

tinted windows. A still from Det. Flynn's body camera video as he initially approached the Tahoe is provided below:



Further, Det. Mayo is observed in his body camera video, even when he was right next to the vehicle, using a flashlight to see into the vehicle through the tint.[12]

### 2. The Defendant Timely Pulled Over and there was no Evidence of Furtive Movements from the Front Seat.

Due to the lack of audio, it appears that, based upon the reflection on the dashboard of Det. Flynn's vehicle, the officers turned their lights on 25 seconds after Det. Flynn's body camera was activated and Mr. Thomas pulled over at the first available turn off, which was approximately 30 seconds later.[13]  In fact, Det. Mayo admitted during the suppression hearing that Mr. Thomas stopped his vehicle at the first available road to the right.[14]

---

[11] *See* Det. Flynn's body camera video at 23:00:27.
[12] Det. Mayo body camera video at 23:00:28.
[13] Det. Flynn's body camera video at 22:59:48—23:00:19.
[14] Det. Mayo testimony at 26:19—27:3 and Defendant's Ex. 2 at the Suppression Hearing.

Office of the
FEDERAL DEFENDER
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

3

Upon activating the lights, Det. Mayo claims that he observed furtive movements from the back to front and front to back of the vehicle,[15] which he believes led to the "abnormal amount of time to pull over."[16]  Det. Mayo testified that the movements can be observed "post-initiation of the lights and sirens."[17]  A review of Det. Flynn and Robbins' body camera videos, however, show no such movements.[18]  And, the arrest citation narrative—which was written by Det. Mayo--mentions nothing of the furtive movements, nor does Det. Mayo's investigative letter.[19] Additionally, no Detectives ever mention this movement during the entirety of all body camera videos.  In fact, the only reference to movement is that of the back-seat passenger, Chris Collins. Det. Flynn notes that he was moving around, but might have been putting on his seatbelt.[20]  He explained that he saw Chris Collins moving his arms in the backseat next to him.[21]  Lt. King observed the same thing—he states on the body camera video that Mr. Collins "was moving all over the place."[22]  Notably, Mr. Collins was charged with possession of the same gun as Mr. Thomas.[23]

### 3. Defendant's Cooperation and Lack of Evidence that Defendant or His Occupants Presented a Risk, Danger of Flight, or that There was Evidence of Drugs or Guns in the Vehicle.

The body camera of Det. Robbins, who first approached Mr. Thomas on the driver's side, shows that the stop occurred at 22:59:34.[24]  Mr. Thomas is observed leafing through his

---

[15]  Det. Mayo testimony at 8:10-11.

[16]  *Id.* at 8:4; 18-21.

[17]  *Id.* at 29:15-17.

[18]  Det. Flynn body camera video at 22:59:48—23:00:19 and Det. Robbins body camera video, entered as Defendant's Exhibit 4 at the suppression hearing, at 22:58:59—22:59:35.  It should be noted that Det. Mayo did not turn his body camera video on until after the stop was initiated and he was out of the vehicle.

[19]  *See* Exhibit 1 and Det. Mayo testimony at 31:1-20.

[20]  Det. Flynn body camera video at 23:04:37-47.

[21]  *Id.* at 23:22:05-19.

[22]  Lt. King body camera video, provided pre-hearing by the United States, at 23:09:39.

[23]  Det. Mayo testimony at 21:7-12.

[24]  *See* Det. Robbins' body camera video.

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

4

paperwork on the driver's side and Det. Robbins asks for his I.D. at 23:00:44.[25]  At 23:01:03, Mr. Thomas hands Det. Robbins his Kentucky driver's license, vehicle registration, and proof of insurance.[26]

Although Det. Robbins told Det. Mayo that Mr. Thomas was not giving him any problems Det. Mayo begins asking Det. Robbins whether they are going to get the Defendant and his passengers out of the vehicle.[27]  Det. Mayo is also told by Det. Flynn during this time that he thinks Det. Mayo "is going to be denied on [his] consent."[28]  Critically, Det. Mayo testified that none of the occupants of the vehicle ever threatened the officers or tried to flee.[29]  In fact, Det. Mayo admitted that he observed nothing specific during the stop that caused him concern for officer safety.[30]  Lt. King echoed this testimony, admitting there "was nothing to indicate" that officer safety was a concern; there had been no threats against the officers and no indication that the occupants were trying to flee.[31]  This is further exemplified by Det. Casper's actions.  While the Detectives were running the occupants' records, Det. Casper arrived on the scene.  No officers were by the Defendant's vehicle; they were all standing around the police vehicles behind and to the left of the car.[32]  Det. Casper walked up and started talking to the Defendant and his occupants about the weather, real estate and their motorcycle club.[33]  He talked to them for approximately three and half minutes with no obvious concern.  After leaving the vehicle, he approaches Det. Mayo, who continues to question why the officers haven't taken the Defendant and his passengers

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 23:02:39.
[28] *Id.* at 23:02:59.
[29] Det. Mayo suppression hearing testimony at 43:23-44:6.
[30] *Id.* at 47:8-20.
[31] Lt. King suppression hearing testimony at 77:4-8 and 78:11-17.
[32] *See* Det. Casper body camera video, *supra.*
[33] *Id.*  at  23:02:31--23:05:25.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

5

out of the car yet.[34]   Det. Flynn tells him at that point, "if you want them out, get them out."[35]

Det. Mayo then decides and states that he is going to go ahead and get them out.[36]  Notably, in

addition to the lack of danger posed by Mr. Thomas and his occupants, Det. Mayo unequivocally

testified at the suppression hearing that he never observed anything indicative of drug activity or

trafficking or possession of a weapon by the occupants before or during the stop.[37]  Despite this,

Mr. Thomas is asked to step out of his vehicle by Det. Mayo at approximately six and half minutes

into the traffic stop.

After getting Mr. Thomas out of the vehicle, Det. Mayo explained on what he and the 9th

mobile were focused.  Det. Mayo advised:

> [The 9[th] mobile] isn't warrant police; we don't do warrants. **We
> don't do drugs, we don't do traffic tickets. We sure as shit
> don't write seat belt tickets. You understand? All we are, are
> the gun cops. That's all we do.** Because we take the guns off the
> streets, that's it. **Regardless of whether your warrant is active or
> whatever it is, we don't take people to jail for warrants**, to be
> honest. We are just guns. Are you good if we just make sure there
> are no guns in that car?[38]

### 4.   The Status of Defendant's Non-Extraditable Warrant was Known to the Detectives Throughout the Duration of the Stop.

Although the United States emphasizes that Mr. Thomas had a warrant, it is, as described

by Det. Robbins, a "POM," i.e. possession of marijuana, warrant out of Pennsylvania.[39]  Per Det.

Mayo, they were aware of this fact **before** pulling over the vehicle because they had already run

a license plate check.[40]  Below is a timeline, based upon the body camera videos of Det. Robbins

---

[34] *Id.* at 23:05:42—23:05:53.
[35] *See* Det. Flynn body camera video at 23:06:18.
[36] *Id.* at 23:06:12.
[37] Det. Mayo suppression hearing testimony at 32:15-33:1 and 35:9-36:10.
[38] Det. Mayo body camera video at 23:09:41—23:10:04.  (Emphasis added).
[39] Det. Flynn body camera video at 23:03:31.
[40] Det. Mayo suppression hearing testimony at 9:25-10:2.

OFFICE OF THE
**FEDERAL DEFENDER**
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

6

(who was running each occupant's name) and Det. Flynn, of the knowledge of the status of that warrant **after** the vehicle was pulled over:

- Det. Robbins 23:02:50:  Runs the Defendant's record;
- Det. Robbins 23:03:35:  Det. Flynn confirms that the warrant "is for POM in Pennsylvania;"
- Det. Robbins 23:05:33 and Det. Flynn 23:06:18:  Det. Mayo is told by Det. Flynn, after asking multiple times, if he wants to get the occupants out of the vehicle, to get them out;
- Det. Robbins 23:05:54 and Det. Flynn 23:06:39:  Det. Mayo, after starting toward Defendant's car, comes back to the police vehicle and is told that the Defendant has a possible warrant out of Pennsylvania.
- Det. Flynn 23:08:37:  Defendant is observed being removed from the driver's side by Det. Mayo.

Critically, Det. Mayo states on the body camera video **upon taking Defendant out of the car** that he "possibly" has a warrant out of Pennsylvania, but it "is not extraditable," i.e. not arrestable,[41]  Additionally, the time line above demonstrates that when Det. Mayo got the occupants out, it was known to the officers—**after checking twice**—that the Defendant's warrant was for possession of marijuana, a non-extraditable warrant.  Indeed, Mr. Thomas was not cited or arrested for this warrant.

### B. The Reason for and Scope of the Search.

#### 1. There is Only One Credible Reason Given by the Officers for the Search—an Open Alcohol Container.

It is undisputed that the reason for the search, based upon all documentation and the body camera videos, is a claim of an open container in the vehicle.  To wit:

- Arrest citation:  "car was searched bc of an open container of alcohol found in the front passenger area."[42]  This citation was "signed" by Detectives Mayo, Robbins and Flynn.[43]

---

[41] Det. Mayo body camera video at 23:08:34.
[42] Arrest citation, *supra.*
[43] *Id.*

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

- Det. Mayo advises Mr. Thomas on video that "there's an open container in the car, so that gives us a right to search your vehicle."[44]

- Lt. King states on video to another officer, "do you know we can look, there's an [sic] open alcohol."[45]

It should be noted that the front seat passenger showed the officers the bottle seated next to him in his seat, advised that the bottle was his, and admitted he was the one drinking it.[46]   There was no belief that Mr. Thomas was drinking and driving; no alcohol was smelled on his breath and no field sobriety tests were given.[47]

Lt. King testified at the suppression hearing that, "based upon the information [he] had at [the] point" of the search, the open alcohol container was the only basis he had to search the vehicle.[48]  He explained that the open container "gives us reason to look in the vehicle just in case there's other alcohol in the vehicle."[49]  **In fact, Lt. King unequivocally stated during his testimony that he limited his search to only other open alcohol containers because of this basis.[50]**  Specifically, he testified that "at that point and time…[I] was looking for more alcohol."[51] It was pursuant to the search based upon an open alcohol container, that a gun was found in a buttoned pocket of a vest underneath other clothes and items in the back seat of the Tahoe.[52] Below is a still from the Lt. King's body camera video depicting the location of the vest before he moved any items to get to it and search in it (the vest is circled in red).

---

[44] Det. Mayo body camera video at 23:10:47.
[45] *See* Lt. King's body camera video at 23:08:58.
[46] Det. Flynn's body camera video at 23:11:30 and Officer Casper's body camera video at 23:08:35.
[47] Det. Mayo suppression hearing testimony at 52:2-10.
[48] Lt. King suppression hearing testimony at 83:20-24.
[49] *Id.* at 66:21—67:1.
[50] *Id.* at 85:17-19.
[51] *Id.*  It should be noted that per Det. Mayo's suppression hearing testimony, he believes he can look for anything within the vehicle once an open container is located.  *See* Det. Mayo testimony at 52:11-53:2
[52] *Id.* at 86:7-15.

Office of the
FEDERAL DEFENDER
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

8



[53]

Although Lt. King explained at the suppression hearing that alcohol can come in even small bottles, he admitted that when he lifted the vest in which the gun was found, he did not hear any type of liquid "swishing around" in the vest.[54] Likewise, there was no smell of alcohol emanating from the vest, nor was the vest wet[55]—all of which would indicate an open container. Lt. King testified that he only looked in the vest because it appeared heavier than another vest he had picked up.[56]

2. **The is No Credible Evidence that Probable Cause to Search the Vehicle was Based upon the Smell of Marijuana.**

At the suppression hearing, **for the first time**, Det. Mayo claims that he smelled un-burnt, green marijuana emanating from the vehicle.[57] This is in contradiction to the arrest citation and the entirety of the body camera videos which mention **absolutely nothing** about the smell of

---

[53] Lt. King body camera video at 23:09:47.
[54] Lt. King suppression hearing testimony at 87:2-5.
[55] *Id.* at 89:5-11.
[56] *Id.* at 68:19-23.
[57] *Id.* at 12:16-18.

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

9

marijuana.  Nowhere on Det. Mayo's 33:15 minute body camera video does he state that he smells

marijuana.  In fact, as mentioned above, Det. Mayo unequivocally tells Mr. Thomas that he is

searching the vehicle because of an open container **not** because of the smell of marijuana.  And,

the arrest citation narrative, drafted by Det. Mayo, lists one and only one reason for the search—

an open container.



There is no mention of the smell of marijuana as a reason for the search in this document.[58]  In

further support of these omissions, Lt. King, who searched the vehicle and found a vest with

marijuana in it, testified that he did not smell marijuana in the vehicle.[59] Additionally, Det. Mayo

can be heard repeatedly asking other officers on scene if they smelled anything in the vehicle to

which all respond in the negative.  He asks both Dets. Flynn and Robbins if they got a "whiff of

anything" and neither advised they did.[60]  Likewise, Det. Mayo asked Det. Casper if "he got any

good scents in there" to which Det. Casper replied, "not really."[61]    After this exchange, Det.

Mayo stated, "it would be kind of interesting to get them out of the car."[62]  Notably, Det. Mayo

tried to explain during the suppression hearing that he was asking these questions for

---

[58] *See* Exhibit 1.
[59] Lt. King suppression hearing testimony at 81:24-82:4.
[60] Det. Flynn body camera video at 23:03:39 and Det. Robbins body camera video at 23:03:02:39.
[61] Det. Mayo body camera video at 23:05:09 and Det. Casper body camera video at 23:05:31.
[62] Det. Mayo body camera video at 23:05:18.

Office of the
**Federal Defender**
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel. (502) 584-0525
Fax (502) 584-2808

10

corroboration from other officers for probable cause to search.[63]   Detrimental to this explanation is that he asked these officers **before** he claims he smelled the marijuana.  Det. Mayo advised that he smelled the marijuana while talking to Mr. Thomas.[64]   However, he did not approach Mr. Thomas until after he had spoken to Dets. Casper, Robbins and Flynn about possible odors in the vehicle.

## II.    ARGUMENT

### A.    The Record of Evidence Demonstrates that Mr. Thomas' Constitutional Rights were Violated and the Fruits of the Warrantless and Unconstitutional Search, Thus, Must be Suppressed.

The search of Mr. Thomas' vehicle is in violation of his constitutional rights on **three (3) separate and distinct grounds**.  First, the scope and duration of the stop exceeded its purpose.  Second, the commission of a violation, i.e. having an open container in a vehicle, under Kentucky law, does not constitute a crime and, therefore, there is no evidence of a crime or contraband for which the officers had a basis to search the vehicle.  Third, even if the officers had the right to search the vehicle based upon the open container, they exceeded the scope because evidence of an open alcoholic container would not be found in a buttoned, interior pocket of a vest in the back seat of a vehicle covered by papers and other paraphernalia.

### 1.    The Scope and Duration of the Stop Exceeded Its Purpose.

Regardless of the reason for the search, the vehicle should never have been searched in the first place.  The officers unconstitutionally prolonged the duration of the stop before the search was conducted.  For this reason alone, any evidence found during the search must be suppressed.

A traffic stop is like an investigative detention, and its scope is governed by *Terry* principles.[65]    "[A]n investigative detention must be temporary and last no longer than is

---

[63]   Det. Mayo suppression hearing testimony at 38:22.
[64]   *Id.* at 36:20-37:2.
[65]   *United States v. Hill*, 195 F.3d 258 (6th Cir. 1999) and *Terry v. Ohio*, 392 U.S. 1 (1968).

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

11

necessary to effectuate the purpose of the stop."[66]  Detrimental to the United States' emphasis

here that Mr. Thomas was pulled out of the vehicle just over six minutes into the stop, the Sixth

Circuit has refused to apply a bright-line rule as to the amount of time constituting an improper

detention.[67]  It has, instead, held:

> we conclude that it would be inappropriate merely to evaluate the
> reasonableness of *the interval of prolongation* in isolation.  Instead,
> the proper inquiry is whether the 'totality of the circumstances
> surrounding the stop' indicates that the duration of *the stop as a
> whole*—including any prolongation due to suspicionless unrelated
> questioning—was unreasonable.[68]
>
> * * * * *
>
> [T]he overarching consideration is *the officer's diligence*—i.e. his
> 'persevering' or 'devoted…application to accomplish [the]
> undertaking' of ascertaining whether the suspected traffic violation
> occurred, and, if necessary, issuing a ticket.[69]

Officers may remove an individual from a vehicle for safety concerns and question them on

unrelated criminal activity "so long as the officer's overall course of action during the traffic stop,

viewed objectively and in its totality, is reasonably directed toward the proper ends of the stop."[70]

If, on the other hand,

> The totality of the circumstances, viewed objectively, establishes
> that the officer, without reasonable suspicion, definitely abandoned
> the prosecution of the traffic stop and embarked on another
> sustained course of investigation, this would surely bespeak of lack
> of diligence.  So, too, if the circumstances establish that, over the
> course of the entire stop, "questions unrelated to the traffic
> violation constituted the bulk of the interaction between the
> [officer] and the [motorist]."[71]

---

[66] *Florida v. Royer,* 460 U.S. 491, 500 (1983).
[67] *United States v. Everett,* 601 F.3d 484 (6th Cir. 2010).
[68] *Id.* at 494.  (Emphasis in original).
[69] *Id.* (Emphasis in original).
[70] *Id.* at 495.
[71] *Id.,* quoting *United States v. Peralez,* 526 F.3d 1115, 1121 (8th Cir. 2008).

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

12

Here, other than Det. Robbins obtaining Mr. Thomas' license and vehicle information at the beginning of the stop, there is no further questioning or investigation by the officers regarding the traffic offense. Indeed, when Det. Mayo pulls Mr. Thomas out of the vehicle, he never questions him about the seatbelt violation. And, as it relates to the warrant for which the United States claims spurred Det. Mayo to get the Defendant out of the vehicle, Det. Mayo admits in the body camera video that he never intended to arrest Mr. Thomas for it. Further, before the Defendant was removed from the vehicle, it was known by the officers—after checking twice— that it was a non-extraditable warrant for possession of marijuana. Det. Mayo only questioned him about whether there were guns in the car.

Det. Mayo and Lt. King testified at the suppression hearing that there was no evidence that the Defendant or his occupants were in possession of a gun. Neither was aware of whether the Defendant had a record for possessing guns and there was no ammunition, holster or other indicia of gun-ownership observed in the vehicle. In short, there was no reasonable suspicion by the officers that Mr. Thomas had a gun in the vehicle.

Critically, Det. Mayo clearly admits on the body camera video that he does not care about seatbelt violations or warrants—he is only interested in guns. And, this was the sole objective of the 9th Mobile when they pulled over the Defendant, got him out of the vehicle and asked to search his car. Under the totality of circumstances, even when there was no reasonable suspicion that Mr. Thomas or the occupants possessed a gun, the 9th Mobile abandoned the prosecution of the traffic stop and embarked on investigating the Defendant for weapons. The duration of the stop, as a whole, was, thus, unreasonable.

The United States fails to address this issue in its brief, instead focusing on the quantity of time involved in the stop, which, as addressed above does not factor into the Court's analysis. In addition, the government's focus appears to be on the argument that both *Pennsylvania v.*

Office of the
Federal Defender
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

*Mimms*[72] and *Maryland v. Wilson*[73] set forth a bright-line rule that an officer, for safety reasons, can pull an individual from a car during any given traffic stop and thereby prolong the stop. However, the United States' own authority provides otherwise. The *Mimms* Court held that "[t]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'"[74] In applying the reasonableness test in Fourth Amendment determinations, the Supreme Court "ha[s] consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry."[75] Moreover, in 2015, the United States Supreme Court recognized in *Rodriguez v. U.S.*,[76] that *Mimms* has no value in situations such as the one before this Court. It held:

> Unlike a general interest in criminal enforcement, however, the **government's officer safety interest stems from the mission of the stop itself.** Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely. **On-scene investigation into other crimes, however, detours from that mission. So too do safety precautions taken in order to facilitate such detours.**[77]

When the Court properly applies a totality of circumstances analysis, instead of a bright-line rule, it is obvious that there was no safety concern by Det. Mayo when he pulled Mr. Thomas and his passenger from the vehicle. Indeed, Det. Mayo testified at the suppression hearing that he had no specific information or observations that caused his concern for officer safety. Lt. King agreed. And, both unequivocally stated that no threats were made and that Mr. Thomas' criminal record caused no concern. When Det. Mayo removed Mr. Thomas from the vehicle, as argued

---

[72] 434 U.S. 106 (1977).
[73] 519 U.S. 408 (1997).
[74] *Mimms, supra* at 108-109.
[75] *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).
[76] 135 S.Ct. 1609 (2015)
[77] *Id.* at 1616. (internal citations omitted)(emphasis added).

Office of the
Federal Defender
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

14

above, it was for the sole purpose of searching for guns. He had, thus, detoured from his traffic stop mission. As held by the United States Supreme Court, Det. Mayo cannot rely on a claim of a safety precaution as a premise to pull Mr. Thomas out of his vehicle under the guise to get consent or to search for guns. Accordingly, the Defendant's removal from the vehicle was unreasonable. In turn, it serves as an unreasonable basis to prolong the stop.

> **2.** **An Open Alcohol Container Does Not Provide Probable Cause to Search the Vehicle Because it Is Not a Crime in Kentucky and, Therefore, no Fruit of a Crime or Contraband Can be Found.**

The only credible reason for the search of the vehicle was an open container. Regardless of whether the officers exceeded the length of the investigatory stop or had a legitimate concern for their safety, the search was illegal because the officers could not search the vehicle based upon an open container. For this reason alone, the evidence obtained as a result of this search and any fruits thereof must be suppressed.

Kentucky Revised Statute ("KRS") 189.530(2) holds:

> A person is guilty of possession of an open alcoholic beverage container in a motor vehicle, when he or she has in his or her possession an open alcoholic beverage container in the passenger area of a motor vehicle located on a public highway or on the right-of-way of a public highway.

KRS 189.990(9)(b) provides "any person who violates KRS 198.530(2) shall be fined not less than thirty-five dollars ($35) nor more than one hundred dollars ($100) for each offense." Under Kentucky law, a "crime" is defined as "a misdemeanor or felony."[78] A violation is defined as "an offense, other than a traffic infraction, for which a sentence to a fine only can be imposed."[79] Thus, a person who is guilty under KRS 189.530(2)—Kentucky's open container law—has only committed a violation, not a crime.

---

[78] KRS 500.080(2).
[79] KRS 500.080(17)

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

15

This concept was recognized by the Kentucky Court of Appeals in 2016 in the case of *Jennings v. Commonwealth.*[80] There, officers pulled over a vehicle leaving a liquor store after observing erratic driving behavior before the vehicle entered the liquor store parking lot.[81] Jennings, who was driving, began to reach behind the front passenger seat, and, as a result, was asked to step out of the vehicle.[82] He was patted down, cuffed, and placed in the police cruiser. Jennings denied permission to search his vehicle.[83] Another officer, who was remaining with the female passenger, noticed a clear cup with liquid in plain view in the center console.[84] The female was asked to get out of the vehicle and the officer observed another cup of partially spilled liquor on the passenger floorboard, as well as, wet carpet.[85] The officer then moved the passenger seat forward and found a handgun under the seat.[86]

Jennings moved to suppress the handgun, but his motion was denied. He entered an open plea and appealed the suppression ruling to the Kentucky Court of Appeals. The Court determined that a violation of Kentucky's Open Alcohol law is just that—"a violation and not a crime."[87] Accordingly, it held:

> **[t]here was no crime committed by possessing the alcohol. Alcohol, under the facts in this case, is not contraband.** The automobile exception permits an officer to search a legitimately stopped automobile where probable cause exists that contraband or evidence of a crime may be in the vehicle.[88]
>
> * * * * *
>
> In the case at bar, Sergeant Day **did not possess the requisite reasonable suspicion, that is, probable cause, to believe that**

---

[80] 2016 WL 447754 (Ky. App., Feb. 5, 2016).
[81] *Id.* at *1.
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.* at *4.
[88] *Id.* (emphasis added).

Office of the
**Federal Defender**
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel. (502) 584-0525
Fax (502) 584-2808

16

**contraband or evidence of a crime may have been in the vehicle** when he pulled the passenger seat up to look for an open bottle of alcohol and discovered a gun.[89]

The Court further observed that because Sergeant Day testified at the suppression hearing that he smelled liquor, the female passenger admitted to possession of the liquor and he saw a spilled cup of alcohol, he had all he needed to charge someone with an open container violation.[90]  Indeed, "finding the bottle of alcohol was not necessary for the citation of the offense…[thus, t]he search should have stopped at that point."[91]

Here, the arrest citation and body camera videos make it clear that there is one reason and one reason only, that the Defendant's vehicle was searched--because of an open alcohol container. Thus, by the officer's own admissions, the only "crime" being investigated is an open alcohol container.  However, in the state of Kentucky—where the Defendant was pulled over, searched and arrested—this is not a crime.  The simple reasoning of the Kentucky Court of Appeals is applicable here—because there was no crime by possessing the alcohol, the officers did not possess probable cause to search the vehicle for evidence of a crime.

The United States cites to two 6th Circuit opinions in which a warrantless automobile search was upheld based upon an open alcoholic container.  However, what the United States fails to advise the Court is that both of these cases involve state laws that hold such actions to be misdemeanors, i.e. crimes, not violations.[92]  Thus, these are distinguishable and inapplicable to the case at hand.  Additionally, the United States only distinguishes *Jennings* on the facts, but fails to address the most important part of this case—it's holding.  There is no doubt that the

---

[89] *Id.* at *5.  (emphasis added).

[90] *Id.* at *4.

[91] *Id.*

[92] *Everett, supra*—which only addresses this issue in a footnote--was based upon Tennessee law which holds that possession of an Open Alcoholic Beverage is a class C misdemeanor under TN ST §55-10-416.  *U.S. v. Howton,* 260 Fed. Appx. 813 (6th Cir., Jan. 16, 2008) is based upon Kansas law, K.S.A. 8-1599(c), which specifically holds that violation of K.S.A. 8-1599, Kansas' Open Container law, is a misdemeanor.

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

17

holding of *Jennings* is directly on point as to the basis for the subject search. Further, while the United States argues about whether the container was visible and open, that is not the issue before this Court. The issue is whether the officers had probable cause to search the vehicle and the scope of that search (discussed below) based upon that bottle. Pursuant to the controlling Kentucky statute, the officers had no right to search the vehicle, regardless of whether that bottle was clearly visible or whether it was open because, either way, it was not a crime to possess it in the Defendant's vehicle.

### 3.  The Officers Exceeded the Scope of the Search Based Upon an Open Alcohol Container.

Even if the United States were successful in proving that the officers had a right to search the vehicle based upon the discovery of an open container, they exceeded the scope of the search. Although the United States relies on the Sixth Circuit opinion of *U.S. v. Howton, supra,* for its assertion that a search is legal pursuant to the discovery of an open alcohol container,[93] it actually contradicts any arguments they may make regarding the scope of the search here. In *Howton,* a state trooper, after observing an open container in the vehicle, searched the vehicle.[94]  He ultimately found marijuana and a crack pipe in a Crown Royal bag underneath the passenger seat.[95] While the 6th Circuit upheld this search, it found that after observing an open container of alcohol, "[t]he troopers then had probable cause to search for **any other similar contraband, i.e. any open containers of alcohol being transported in the vehicle in violation of state law.**"[96] The court further observed that "[b]ecause Crown Royal is a type of alcoholic beverage and because the bag could have contained an open, i.e. unsealed, container of alcohol," the trooper

---

[93] DN 20.
[94] As argued above, possession of an open alcohol container in Kansas is a misdemeanor, i.e. crime.
[95] *Howton, supra* at 815.
[96] *Id.* at 817.

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

18

had reasonable suspicion to open the bag.[97] Thus, under the law cited by the United States, officers' searches under the open container exception is limited to other open containers of alcohol.

In the case at bar, Lt. King exceeded the scope of the search for other open alcohol containers. He claims that because the vest where the gun was located was heavier than the other vest he had picked up, then it could contain a small bottle of alcohol. Aside from this weight discrepancy, Lt. King admits there was no other evidence that the vest contained an open alcohol container. He did not hear anything indicative of liquid; he did not smell alcohol; and the vest was not wet. There were simply no factors present that would lead a reasonable officer to believe that an unsealed alcohol container was inside that vest. Lt. King had no probable cause to believe he would locate an open container in the buttoned interior pocket of the vest. Because of this, he exceeded the scope of the search and the Court must suppress all evidence found within the vest.

### 4. There is No Credible Evidence that the Search of the Vehicle was Pursuant to the Open and Obvious Smell of Marijuana and, Thus, the Firearm Would not Have Been Inevitably Discovered.

The United States claims that under the doctrine of inevitable discovery, the gun would have been found because of Det. Mayo's observation of the odor of marijuana. Under this doctrine, the government must establish, as is its burden in all suppression hearings, by a preponderance of evidence that the information would have been discovered by lawful means.[98] Preponderance of evidence means an amount of evidence that is enough to persuade the court that the existence of a fact is more probable than its non-existence.[99] A Court's determination under

---

[97] *Id.*

[98] *Nix v. Williams,* 467 U.S. 431, 444 (1984) and *U.S. v. Matlock,* 415 U.S. 164, 177 n. 14 (1974).

[99] *Metropolitan Stevedore Co. v. Rambo,* 521 U.S. 121, 137 n.9 (1997).

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

this standard must nonetheless be "supported by competent and credible evidence."[100]  Thus, the Court's determination on this issue turns on whether Det. Mayo's claim that he observed the odor of raw marijuana is credible.

A court has wide latitude for its credibility determinations.[101]  There are several factors on which a court can rely in determining credibility.   The Court may consider the consistency in testimony[102]--compared  to  other  witnesses;[103]  whether  "[d]ocuments  or  objective evidence...contradict[s] the witness' story; or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it."[104]   The Court may also consider the bias or prejudice of the witness; whether he has anything to gain or lose from the case; or whether anything might cause him to lie or slant testimony in favor of one side or the other.[105]  But, ultimately, the Court must rely "on the common sense test of reason and logic" in determining the credibility of a witness.[106]

Det. Mayo's claims that he could smell green, unburnt marijuana through a plastic bag and clothing is without credibility.   It was not until the suppression hearing of this matter—almost a year after the arrest—that Det. Mayo claimed **for the first time** that the reason for the search of the vehicle was because he smelled marijuana.  Up until that point, Det. Mayo had never claimed this as a reason to search the vehicle.  In fact, by Det. Mayo's own words, the **only reason ever given up until the suppression hearing was the open alcohol container.**  He stated this in writing in the arrest citation.  And, he stated this orally on the body camera video when advising Mr. Thomas as to the reason for the search.  Further, Lt. King testified that he was limited in the

---

[100] *U.S. v. Stepp,* 680 F.3d 651, 668 (6th Cir. 2012), quoting *Fields v. Bagley,* 275 F.3d 478, 485 n.5 (6th Cir. 2001).
[101] *U.S. v. Haynes,* 301 F.3d 669, 679 (6th Cir. 2002).
[102] *See U.S. v. Simmons,* 174 Fed. Appx. 913, 917 (6th Cir. 2006).
[103] *Hamadna v. Mukasey,* 2009 WL 87476, *2 (6th Cir., Jan. 13, 2009).
[104] *Anderson v. City of Bessemer City,* 470 U.S. 564, 575 (1985).
[105] 6th Circuit Pattern Jury Instructions, 1.07(2)(E).
[106] *U.S. v. Murphy,* 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005).

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

20

scope of the search to only open alcohol containers.  This evidences the belief of the officers that the search was based on the open container only, not marijuana.

Aside from listing a different reason for the search, there is no evidence, other than Det. Mayo's current claim, that an odor of marijuana could be observed at the scene.  Of the over 33 minutes captured from Det. Mayo's body camera video he never utters one single time that he smelled marijuana.  Of the six other officers present at the scene, none of them smelled marijuana. This is evidenced by Det. Mayo's questioning of three (3) other Detectives—Robbins, Flynn and Casper—all of who told him "no" when asked if there were any funny smells.  Further, Lt. King testified at the suppression hearing that he did not smell any marijuana in the vehicle even though he was the one that found and searched the vest where a baggy was located.

Finally, this claim of the observation of the odor of marijuana is disputed by Det. Mayo's own actions.   While he claims he could have searched the vehicle once he smelled the marijuana, he did not.  He testified that he smelled it when he approached Mr. Thomas's door and got him out of his vehicle.  Yet, he did not search at that time.  He then asked for Mr. Thomas' consent, which he denied.  Again, Det. Mayo did not search.  It was not until he was told that there was an open container in the vehicle that he gave the green light to search.  Had Det. Mayo truly smelt marijuana upon removing Mr. Thomas from the vehicle, why did he not search immediately?  It was not because, as he claimed at the suppression hearing, he was waiting for corroboration; he had already asked other officers **before** he approached Mr. Thomas and none of them had smelled anything.  The logical and common sense reason Det. Mayo did not search the vehicle until the open container was found is that he never observed the marijuana odor.

In addition to these contradictions, there were other portions of Det. Mayo's testimony that demonstrates his lack of credibility.  He claimed that Mr. Thomas took an abnormal amount of time to pull over, yet the body camera videos show that he pulled over in 30 seconds from the

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

lights and sirens being activated. And, he pulled over at the first available turn off. Det. Mayo also claimed that he observe furtive movements in the vehicle during this abnormal amount of time. However, the body camera videos show no such movement.

Det. Mayo's testimony concerning the odor of marijuana is unreliable due to its lack of credibility. His testimony is contradicted by (1) his own written account in the arrest citation and (2) his own spoken words on the body camera video from the date of arrest. His fellow Detectives—four in total—contradict his testimony of the odor of marijuana. Det. Mayo's own actions of not immediately searching the vehicle upon the observation of marijuana contradicts his testimony. Video from the date of the arrest contradicts him on other matters—the slow time to pull over and furtive movements. In sum, Det. Mayo's claims of the odor of marijuana is contradicted by all other evidence in this case--his own words, his actions, other officers' words, videotape of the incident and documents of his own creation. In such circumstances, the Court must declare his testimony as incompetent and non-credible.

Because Det. Mayo's testimony regarding the marijuana is not credible, the Court cannot rely on this evidence in rendering its opinion. The United States fails, therefore, to meet its burden of proof in establishing the constitutionality of the seizure of the gun under the inevitable discovery doctrine.

## III.    <u>CONCLUSION</u>

It is clear from the body camera videos in this matter that the 9th Mobile had one goal and one goal only in the stop of Mr. Thomas' vehicle—to pull him out and search the truck for a gun. The officers were not interested in a traffic violation, as admitted by Det. Mayo on the body camera videos. Aside from obtaining Mr. Thomas' license, registration and insurance at the beginning of the stop, the officers abandoned this investigation to focus on searching the vehicle. While the United States claims that the officers were still running the occupants for warrants, it

Office of the
**Federal Defender**
200 Theatre Building
629 Fourth Street
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

22

is clear from the suppression hearing testimony and body camera videos that at the time Mr. Thomas was pulled from his truck, the officers had twice check and confirmed that the possession of marijuana warrant was non-extraditable.   The officers failed to obtain consent from Mr. Thomas to search the vehicle, so they pulled him and his passengers out, only to discover that the front seat passenger had a corked bottle of alcohol beside him. Using this as a basis, they searched the truck.  In Kentucky, however, an open alcohol container is a violation and does not give them the right to do so.  As a result, for the first time at the suppression hearing, Det. Mayo claims he smelled raw marijuana in the vehicle, which gave him the right to search.  All other evidence presented at the hearing and in the documents and body camera videos contradict this claim. When this unreliable evidence is set aside and the Court focuses on the only plausible reason to search the vehicle, the search can only be found to be unconstitutional.  The officers could not find evidence of a crime or contraband because they can only search for an open alcohol container, which is a violation.  Further, by going into the inside, buttoned pocket of a vest to look for an open container when there was no evidence that such an object was inside that vest, they exceeded the scope of any plausible search.

The duration of the stop, the reason for the search, and the scope of the search, each, independently, provide a basis for suppression of the evidence.  The Detectives committed constitutional violations during each step of this process.  For these reasons, the Defendant respectfully requests the Court grant his motion to suppress.

s/ Chastity R. Beyl
Assistant Federal Defender
200 Theatre Building
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

OFFICE OF THE
FEDERAL DEFENDER
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808

23

## CERTIFICATE

I hereby certify that on November 8, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.


/s/ Chastity R. Beyl

OFFICE OF THE
**FEDERAL DEFENDER**
200 THEATRE BUILDING
629 FOURTH STREET
LOUISVILLE, KY 40202

TEL (502) 584-0525
FAX (502) 584-2808