UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO: 3:19-CR-00024-JHM

UNITED STATES OF AMERICA                                           PLAINTIFF

V.

KENNETH LLOYD THOMAS                                               DEFENDANT

<u>**Memorandum Opinion and Order**</u>

This matter is before the Court on Defendant Kenneth Thomas's Motion to Suppress Evidence. [DN 15]. The Court held a hearing on this matter on October 7, 2019. Fully briefed, this matter is ripe for decision. For the following reasons, Mr. Thomas's Motion is **GRANTED**.

## I. Background

On October 4, 2018, shortly after 7:00 p.m., Mr. Thomas was driving a 2006 Chevy Tahoe in Louisville, Kentucky, when his vehicle was pulled over by members of the Ninth Mobile Unit of the Louisville Metro Police Department. Detectives William Mayo, Jonathan Robbins, and Curt Flynn pulled behind Mr. Thomas's vehicle at a red light. Detective Mayo testified at the suppression hearing that because of the time of day, he could plainly observe through the Tahoe's rear window that neither the driver nor the two passengers were wearing seatbelts. [DN 24 at 6:8–6:24]. After the light changed, the officers followed the Tahoe for roughly 30 seconds before initiating a traffic stop. Once both vehicles were stopped, Detective Mayo approached the driver's side of the vehicle and asked the occupants to roll down their windows while Detective Robbins approached the right side of the vehicle.

After getting the occupants' identification, the officers checked whether anyone in the vehicle had an outstanding warrant. The check revealed that Mr. Thomas had a warrant out of

Pennsylvania. The officers began to check what the warrant was for and whether it was extraditable. Detective Mayo then made the decision that he was going to get Mr. Thomas out of the vehicle. The detective approached Mr. Thomas's window and asked him to step out of the car. When Mr. Thomas questioned why such a request was made, Detective Mayo referred to two Supreme Court cases granting him the right to order the driver and any passengers out of a vehicle during a traffic stop. Two minutes later, Mr. Thomas agreed and voluntarily exited the vehicle. Both the front and rear passengers also exited and were asked to come to the back of the vehicle for questioning. When the front passenger exited the vehicle, Lieutenant King—another officer who arrived on scene separately—discovered a corked bottle thereafter identified as some type of alcohol in plain view.

      Based on the alcohol container, Lieutenant King began searching the front seat passenger area. When Detective Mayo stepped back to the driver side door a few minutes later, he asked whether the lieutenant had a basis to search the vehicle. Lieutenant King responded that they found an open container, an answer which appeared to satisfy Detective Mayo as he walked back to the rear of the car to continue talking to Mr. Thomas and his passengers. The lieutenant testified at the hearing that he limited his search to only other open alcohol containers because the open container served as the basis for the search. [*Id.* at 85:17–19]. After completing a search of the front passenger area and finding nothing of note, Lieutenant King moved to the rear, right passenger area and began his search. After picking up two vests in the back seat, Lieutenant King identified something heavy in the second vest. He searched the pockets, looking for the source of the weight, and discovered a .380 caliber Remington pistol—the firearm that is the subject of this motion. One of Mr. Thomas's occupants claimed ownership of the first vest, but Mr. Thomas said the second vest—the one in which the gun was found—belonged to one of their

motorcycle club brothers. Upon a further search of the second vest, Lieutenant King also found the title to a motorcycle. The title was in Mr. Thomas's name. The officers on scene also understood that Mr. Thomas was a convicted felon. At that point, the decision was made to arrest him.

Mr. Thomas was indicted on February 20, 2019, on a single count of being a felon in possession of a firearm. [DN 1]. He filed the instant Motion to Suppress on August 14, 2019. [DN 15]. The Court held a hearing on the matter on October 7, 2019. Thereafter, the United States submitted a Post-Hearing Brief. [DN 26]. Mr. Thomas responded asserting three separate and distinct grounds upon which the Court may find that his Fourth Amendment rights were violated. [DN 29]. The United States did not reply.

## II. DISCUSSION

As support for the Motion to Suppress, Mr. Thomas submits three arguments. Specifically, Mr. Thomas argues that: (1) "the scope and duration of the stop exceeded its purpose"; (2) "the commission of a violation, i.e. having an open container in a vehicle, under Kentucky law, does not constitute a crime and, therefore, there is no evidence of a crime or contraband for which the officers had a basis to search the vehicle"; and (3) "even if the officers had the right to search the vehicle based upon the open container, they exceeded the scope" of a legal search by reaching into the vest pocket based purely on the vest's weight. [*Id.* at 11].

### A. Scope and Duration

Mr. Thomas does not argue—nor could he—that the traffic stop was invalid at its outset. Even if the officers' decision to stop the vehicle for a traffic violation was pretextual, as is alluded to in Mr. Thomas's Response brief, "the constitutional reasonableness of traffic stops [under the Fourth Amendment does not] depend[ ] on the actual motivations of the individual officers

3

involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). Mr. Thomas does not contest the accusation that the occupants of the vehicle were not wearing seatbelts.

"The question of whether a particular traffic stop passes constitutional muster is analyzed under 'the standard for temporary detentions set forth in *Terry v. Ohio*, and its progeny.'" *United States v. Winters*, 782 F.3d 289, 295–96 (6th Cir. 2015) (quoting *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010)) (internal citation omitted). A seizure that is lawful at its inception, like the stop in this case, "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The *Terry* framework provides that a traffic stop "must . . . last no longer than is necessary to effectuate the purpose of the stop," and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Mr. Thomas premises his challenge to the scope and duration of the stop on Detective Mayo removing him from his vehicle. [DN 29 at 11–15]. Specifically, Mr. Thomas argues that "[w]hen the Court properly applies a totality of the circumstances analysis, . . . it is obvious that there was no safety concern by Det. Mayo when he pulled Mr. Thomas and his passenger from the vehicle." [*Id.* at 14]. The United States, in turn, relies on Supreme Court case law that grants officers the right to ask drivers and their passengers to exit a vehicle during a traffic stop due to officer safety concerns. [DN 26 at 6–7 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977); *Maryland v. Wilson*, 519 U.S. 408, 413–14 (1997))].

Just after six minutes into the stop, Detective Mayo's body camera footage reveals him making the decision to remove Mr. Thomas from the vehicle. Two minutes later, after an exchange between Detective Mayo and Mr. Thomas, Mr. Thomas can be seen exiting his vehicle.

4

Upon exiting the vehicle, Detective Mayo informed Mr. Thomas that the reason he asked him to step out was because he had a warrant out of Pennsylvania. Detective Mayo explained that it appeared the warrant was non-extraditable but that his fellow officers were double-checking that fact. Detective Mayo further explained that sometimes during traffic stops when an officer informs a driver that he or she has an outstanding warrant, the driver attempts to flee, creating a safety concern for both the officers on scene as well as the driver and any occupants of the vehicle. Indeed, the Supreme Court has noted that traffic stops "are 'especially fraught with danger to police officers.'" *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)). "As a result, police officers may order drivers and passengers out of the automobile during the traffic stop without offending the Fourth Amendment." *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014) (citing *Wilson*, 519 U.S. at 414). "As explained in *Mimms* and *Johnson*, the legitimate and weighty interest in police officer safety outweighs the *de minimis* additional intrusion of requiring a driver who is already lawfully stopped to get out of the car." *United States v. Ware*, 465 F. App'x, 487, 494 (6th Cir. 2012) (citing *Mimms*, 434 U.S. at 110–11). Here, the Court believes that it was reasonable for Detective Mayo to ask Mr. Thomas to step out of his vehicle based on a concern for officer safety related to the warrant.

Mr. Thomas's argument about the necessity to consider the totality of the circumstances in reaching a decision, while well-taken, does not change the Court's decision. The Court finds that, upon evaluating the circumstances, the scope and duration of the traffic stop were reasonable. Accordingly, Detective Mayo's removing Mr. Thomas from his vehicle did not violate Mr. Thomas's constitutional rights. The remaining issue is whether Lieutenant King violated the Fourth Amendment when he searched the vehicle and located the firearm.

## B. Automobile Exception to the Warrant Requirement

The Supreme Court has instructed that every case addressing the reasonableness of a warrantless search must begin with the basic rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). "The Government has the burden of proof to justify a warrantless search." *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002); *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) ("The burden is on those seeking the exemption to show the need for it.") (quotation marks and citations omitted).

One of the long-recognized exceptions to the warrant requirement concerns searches of vehicles—the exception relied upon by the United States in the instant case. Although early cases concerning the automobile exception relied on the "ready mobility" of the vehicle to excuse the warrantless search, *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996), more recent Supreme Court cases explain that "[e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception." *California v. Carney*, 471 U.S. 386, 391 (1985). Accordingly, exigent circumstances are no longer necessary for the automobile exception to be triggered. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) ("The Court has emphasized that the exception has no separate exigency requirement.") (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999).

Pursuant to the automobile exception, police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (citations omitted). "Probable cause

exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.), *cert. denied*, 512 U.S. 1243 (1994)). In other words, "[a]n automobile search is not 'unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.'" *United States v. Arnold*, 442 F. App'x 207, 210 (6th Cir. 2011) (quoting *United States v. Ross*, 456 U.S. 798, 809 (1982)).

The United States argues the officers had probable cause to search Mr. Thomas's vehicle based upon the finding of an open container of alcohol in the front passenger seat immediately after the passenger was removed. [DN 20 at 7–9]. Mr. Thomas responds that an open alcohol container cannot provide the basis for a search pursuant to the automobile exception according to Kentucky law. [DN 29 at 15–18]. Mr. Thomas relies heavily on a 2016 Kentucky Court of Appeals decision as well as the text of several Kentucky statutes. [*Id.*].

In *Jennings v. Commonwealth*, the court effectively summarized the relevant Kentucky statutes—KRS § 189.530, KRS § 189.990(9)(b), and KRS § 500.080(2), (10). 2016 WL 447754, at *4 (Ky. Ct. App. Feb. 5, 2016). Section 189.530 concerns the underlying offense which the United States relies upon to justify the search of Mr. Thomas's vehicle—possession of open alcohol beverage containers in motor vehicles. That statute provides in pertinent part:

> (2) A person is guilty of possession of an open alcoholic beverage container in a motor vehicle, when he or she has in his or her possession an open alcoholic beverage container in the passenger area of a motor vehicle located on a public highway or on the right-of-way of a public highway. However, nothing in this section shall prohibit the possession of an open alcoholic beverage container by an individual who is strictly a passenger and not the driver, in the passenger area of a motor vehicle maintained or used primarily for the transportation of persons for compensation, such as buses, taxis, and limousines, or in a recreational vehicle, motor home, or motor coach.

7

> . . .
>
> (4) For the purposes of this section, "open alcoholic beverage container" means any bottle, can, or other receptacle that contains any amount of alcoholic beverage, and:
>
> > (a) Is open or has a broken seal; or
> >
> > (b) The contents of which are partially removed.
>
> (5) For the purposes of this section, "passenger area" means the area designed to seat the driver and the passengers while the motor vehicle is in operation and any area that is readily accessible to the driver or a passenger while in their seating positions, including the glove compartment. . . .

This language is nestled in Chapter 189 of Title XVI of the Kentucky Revised Statutes—the chapter related to traffic regulations. The penalty for violation of this subsection is a fine ranging from $35 to $100. KRS § 189.990(9)(b). A violation of the subsection is not considered a crime according to the Kentucky Penal Code, which defines a crime as a misdemeanor or felony. KRS § 500.080(2). The same statute, in subsection (10), defines a misdemeanor as "an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed." KRS § 500.080(10). The court in *Jennings*, considering facts similar to this case, concluded that possession of the open alcohol container in the vehicle was not a crime nor was the open container contraband. *Jennings*, 2016 WL 447754, at *4. Thus, the Kentucky Court of Appeals concluded the officers had no justification to conduct a search of the vehicle. Applying the rationale of *Jennings* to this case, the evidence must be suppressed.

The United States cites to another case in which this Court upheld a search under similar facts. U*nited States v. Howton*. No. 4:03-CR-00035-JHM (W.D. Ky. Jun. 29, 2004). In *Howton*, a vehicle was pulled over in Kansas after it drifted onto the shoulder twice. Mr. Howton was one of the passengers and the vehicle was rented in his name. The trooper on scene asked to speak

with the driver and, while doing so, noticed an open beer can in the dashboard cup holder. After being denied consent to search, and believing he had probable cause to search based on the open beer can in violation of Kansas law, the trooper began a search of the van for additional open containers. A crack pipe and marijuana were found during the search, which the officer believed provided probable cause to search the vehicle for drugs and drug-related paraphernalia. Continuing the search, the trooper located 4.8 pounds of methamphetamine.

Mr. Howton moved to suppress the evidence seized during the stop. This Court, citing *United States v. McGuire*, 957 F2d 310, 314 (7th Cir. 1992), denied his motion stating that once the trooper observed an open container of beer in plain view, he had probable cause to search every part of the vehicle that could conceal additional open containers of alcohol. *Id.* at (DN 61). On appeal, the Sixth Circuit affirmed the denial. 260 F. App'x 813, 817 (6th Cir. 2008).

*Howton* could perhaps be distinguished by the fact that possession of an open container in a vehicle is a crime in Kansas, whereas, it is not a crime in Kentucky. And the Court could apply *Jennings* and conclude open containers of alcohol are not contraband under Kentucky law. However, the Court feels it necessary to provide a more complete explanation for its decision not to follow *Howton* in this case. In *Howton*, neither this Court nor the Sixth Circuit engaged in any sort of analysis of the facts giving rise to the finding of probable cause—the only fact that mattered was that the trooper had observed an open container of alcohol in the vehicle. The Court believes that the threadbare analysis of *Howton* warrants reconsideration in light of later Supreme Court caselaw—specifically, *Arizona v. Gant*. 556 U.S. 332 (2009).

Although *Gant* addressed warrantless searches incident to lawful arrests, its reasoning and subsequent interpretation by lower federal courts is instructive in this context. In *Gant*, the Court clarified a previously confusing standard for warrantless searches incident to lawful arrests.

9

*Id.* The Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or *it is reasonable to believe the vehicle contains evidence of the offense of arrest*." *Id.* at 351 (emphasis added).

The Court did not expressly clarify the meaning of the phrase "reasonable to believe." As a result, confusion has mounted among the lower federal courts and various state courts. The Sixth Circuit has not expressly decided what is meant by the phrase but has stated that a "reasonable belief standard" is "lesser" than a probable cause standard. *United States v. Pruitt*, 458 U.S. 477, 482 (6th Cir. 2006). And that court has explained that "[r]easonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *Id.* The Eastern District of Tennessee, discerning no meaningful difference between the phrases "reasonable belief" and "reason to believe," concluded that the Sixth Circuit would likely construe *Gant*'s "reasonable to believe" standard "as the functional equivalent of *Pruitt*'s 'reasonable belief standard.'" *United States v. Reagan*, 713 F. Supp. 2d 724, 728 (E.D. Tenn. 2010). The Court finds persuasive the Eastern District of Tennessee's opinion and similarly concludes that under *Gant* officers may search the passenger compartment of a vehicle without a warrant when "the arrestee is within reaching distance of the passenger compartment at the time of the search," 556 U.S. at 351, "or when it is reasonable to believe, based upon common sense factors and the totality of the circumstances, that evidence of the offense of the arrest is inside." *Reagan*, 713 F. Supp. 2d at 728.

The Court believes the line of reasoning of *Gant* and its subsequent interpretation is applicable in the context of the automobile exception. As abovementioned, "[p]ursuant to the automobile exception to the warrant requirement, an officer may search a readily mobile vehicle

10

without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime" or other contraband. *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (citing *California v. Carney*, 471 U.S. 386, 390–94 (1985); *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994). Because the Sixth Circuit has explained that the probable cause standard is higher than that which is required to have a reasonable belief, any finding of probable cause under the automobile exception must be based, *at the very least*, on "common sense factors and the totality of the circumstances."

In *Howton*, the inquiry turned on what, effectively, was a per se rule—once an officer views an open container of alcohol in a vehicle, he or she automatically has probable cause to search the vehicle. *See United States v. Howton*, No. 4:03-CR-00035-JHM (W.D. Ky. Jun. 29, 2004) (DN 61) ("After initiating the traffic stop, Trooper Rule approached the vehicle and observed an open container on plain view. This gave Trooper Rule probable cause to search every part of the vehicle and its contents that could conceal additional open containers of alcohol, including the rear cargo area."); *United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008) (same). In light of *Gant* and the lower court interpretations thereof, the Court now believes that application of such a per se rule is violative of the Fourth Amendment. Instead, courts considering whether an officer has probable cause to believe that evidence of a crime or other contraband might be found in a vehicle must perform a case-specific inquiry taking into account the particular circumstances.

After performing such a particularized analysis, the Court concludes no probable cause existed here to believe that additional open containers would be found in Mr. Thomas' vehicle after Lieutenant King identified the open alcohol container on the front passenger seat. The alcohol was not found in another cup or another container, separate from its original container.

11

If it was, it would perhaps be reasonable to conclude that the original container would be found elsewhere in the vehicle. However, the container observed was the large original container. Nothing suggests that there would be another container found. There were no other cups or containers scattered around the vehicle. No one in the vehicle appeared to be intoxicated, no field sobriety tests were performed, and there was no evidence that any of the passengers or the vehicle smelled of alcohol. There were no visible wet spots when the passengers stepped out of the vehicle which might indicate open containers of alcohol had been in other parts of the vehicle. Lieutenant King did not testify to having experience recovering additional evidence of open alcohol containers from vehicles in comparable circumstances. Further, the lieutenant did not point to *any* specific and articulable facts which would warrant the conclusion that additional open containers of alcohol might be found in the vehicle. Accordingly, the Court concludes that in this case, based on these facts, the officers did not possess the requisite probable cause to justify a warrantless search under the automobile exception. That being the case, the firearm, discovered by Lieutenant King because of the unconstitutional search, must be suppressed as fruit of the poisonous tree unless an exception to the exclusionary rule applies.

### C. Inevitable Discovery

"The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). According to Supreme

Court case law, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* The Court must now decide whether the exclusionary rule requires the suppression of the firearm—a fruit of the unconstitutional search of Mr. Thomas's vehicle.

The United States contends for the first time in its post-hearing brief that even without Lieutenant King's search, the firearm would inevitably have been discovered by Detective Mayo's search for marijuana. [DN 26 at 9–10]. At the suppression hearing, Detective Mayo claimed he smelled marijuana, in its green, unburnt form, after approaching the driver's side window of Mr. Thomas's vehicle. [DN 24 at 36:20–37:2]. Detective Mayo further testified that based upon smelling the marijuana, he intended to search the vehicle regardless of the fact that Lieutenant King subsequently performed a search based on the open container. [*Id.* at 53:8–15]. Indeed, Detective Mayo testified that eight grams of marijuana were found in plastic baggies in the back seat of Mr. Thomas's vehicle. [*Id.* at 37:3–9]. The United States correctly notes that when officers smell the odor of marijuana coming from a vehicle, they have probable cause to search the vehicle without a warrant based on the automobile exception. [DN 26 at 9 (citing *United States v. McKinley*, 735 F. App'x 871, 873 (6th Cir. 2018)]. However, Mr. Thomas does not contest the officers' ability to search his vehicle upon detecting the scent of marijuana. Instead, Mr. Thomas challenges the credibility of Detective Mayo's testimony that he smelled marijuana. [DN 29 at 19–22].

Mr. Thomas argues that the Court should not credit the argument that Detective Mayo smelled the odor of unburnt marijuana, giving him probable cause to search the vehicle regardless of the presence of the open alcohol container, because it was not until the suppression hearing, nearly a year after the initial stop, that Detective Mayo made such a claim. [*Id.* at 20]. Mr.

13

Thomas points to the arrest citation, written by Detective Mayo, which specifically states the grounds for the search as discovery of an open alcohol container in the passenger area. [DN 29 at 20, 10]. Mr. Thomas relies further on the submitted body camera footage. Mr. Thomas argues that a close review of the footage reveals that no officer on scene, including Detective Mayo, indicated smelling marijuana during the stop. [DN 29 at 20–21]. Finally, Mr. Thomas directs the Court's attention to Lieutenant King's hearing testimony to substantiate his argument. [*Id.* at 21].

"The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams,* 467 U.S. 431, 444 (1984)). The Supreme Court explained that "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *Nix*, 467 U.S. at 444. "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *Kennedy*, 61 F.3d at 498 (quoting *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992), *cert. denied*, 510 U.S. 1045 (1994)) (internal quotation marks omitted).

Because Mr. Thomas does not challenge the United States' argument that Detective Mayo would have had probable cause to search the vehicle if he smelled the odor of unburnt marijuana, the only question for the Court to determine is whether to credit Detective Mayo's testimony that he did in fact smell such an odor. In this instance, the body camera footage as well as the arrest

14

citation written by Detective Mayo himself do not support the position that Detective Mayo smelled marijuana at any point during the stop. The Court finds persuasive the story told by the body camera footage and the arrest citation—pieces of evidence produced contemporaneously with the traffic stop. The arrest citation expressly states that the vehicle was searched based on the open container of alcohol in the front passenger area. [DN 29 at 10]. Although the arrest citation does make mention of finding a small amount of marijuana, nowhere does Detective Mayo state that he, or any other officer on scene, smelled marijuana prior to finding the abovementioned baggies. [*Id.*]. Detective Mayo acknowledged on cross-examination that the arrest citation made no mention of observing the scent of marijuana. [DN 24 at 38:13–38:16].

Mr. Thomas's argument is further bolstered by a close look at Detective Mayo's body camera footage. After review, the Court identified three exchanges where Detective Mayo asked his fellow officers if they smelled anything in the vehicle and not one of those officers responded in the affirmative. Detective Mayo's own actions further contradict his suppression hearing testimony. During the stop, Detective Mayo asks Mr. Thomas to step out of the vehicle and then engages in a lengthy exchange about why Mr. Thomas is required to do so according to Supreme Court case law concerning officer safety. If Detective Mayo had truly detected the odor of marijuana before asking Mr. Thomas to step out of his vehicle, as he testified, this exchange would likely have been different.

As the final nail in the inevitable discovery coffin, Lieutenant King—the officer who actually discovered the baggies of marijuana during the stop—testified at the suppression hearing that smelling the scent of marijuana emanating from the vehicle was not something that stood out to him when recalling the stop. [DN 24 at 81:24–82:4].

Relying on the above evidence, the Court finds that Detective Mayo's suppression hearing testimony on this score is not credible. Because the Court does not credit Detective Mayo's testimony that he smelled unburnt marijuana, the Court concludes that the officers on scene and searching Mr. Thomas's vehicle would not have inevitably discovered the firearm. The officers' error here rises to the level articulated by the Supreme Court in *Herring* and accordingly the evidence of the firearm must be excluded. *See Herring v. United States*, 555 U.S. 135, 144 (2009).

### III. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Thomas's Motion to Suppress Evidence [DN 15] is **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

January 21, 2020

cc: counsel of record