UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO: 3:19-CR-00024-JHM**

**UNITED STATES OF AMERICA**                                                            **PLAINTIFF**

**V.**

**KENNETH LLOYD THOMAS**                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by the United States to reconsider the Court's January 22, 2020, Order granting Defendant's Motion to Suppress. [DN 43]. The Court held a hearing on Defendant's Motion to Suppress on October 7, 2019, and thereafter issued the challenged Opinion. [DN 36]. Fully briefed, this matter is ripe for decision. For the following reasons, the United States' Motion is **DENIED**.

### I. BACKGROUND

The facts of this case were previously addressed at length. For the sake of this Motion, an abbreviated factual summary is sufficient. On October 4, 2018, shortly after 7:00 p.m., Mr. Thomas was driving in Louisville, Kentucky, when his vehicle was pulled over by members of the Ninth Mobile Unit of the Louisville Metro Police Department. Detectives William Mayo, Jonathan Robbins, and Curt Flynn pulled behind Mr. Thomas's vehicle at a red light. Detective Mayo testified at the suppression hearing that because of the time of day, he could plainly observe through the Tahoe's rear window that neither the driver nor the two passengers were wearing seatbelts. [DN 24 at 6:8–6:24].

After obtaining the occupants' identification, the officers checked whether anyone in the vehicle had an outstanding warrant. The check revealed that Mr. Thomas had a warrant out of

Pennsylvania. The officers began to check what the warrant was for and whether it was extraditable. Detective Mayo then made the decision that he was going to get Mr. Thomas out of the vehicle. The detective approached Mr. Thomas's window and asked him to step out of the car. Two minutes later, Mr. Thomas agreed and voluntarily exited the vehicle. Both the front and rear passengers also exited and proceeded to the back of the vehicle for questioning. When the front passenger exited the vehicle, Lieutenant Robert King—another officer who arrived on scene separately—discovered a corked bottle thereafter identified as some type of alcohol in plain view.

Based on the alcohol container, Lieutenant King began searching the front seat passenger area. When Detective Mayo stepped back to the driver side door a few minutes later, he asked whether the lieutenant had a basis to search the vehicle. Lieutenant King responded that they found an open container, an answer which appeared to satisfy Detective Mayo as he walked back to the rear of the car to continue talking to Mr. Thomas and his passengers. During the search, Lieutenant King picked up two vests in the back seat, one of which was noticeably heavier than the other. He searched the pockets, looking for the source of the weight, and discovered a .380 caliber Remington pistol—the firearm that is at the heart of this criminal charge. When asked, Mr. Thomas said the vest—the one in which the gun was found—belonged to one of their motorcycle club brothers. Upon a further search of the second vest, Lieutenant King found the title to a motorcycle. The title was in Mr. Thomas's name. The officers on scene, understanding that Mr. Thomas was a convicted felon, made the decision to arrest him.

Mr. Thomas was indicted on February 20, 2019, on a single count of being a felon in possession of a firearm. [DN 1]. He filed a Motion to Suppress on August 14, 2019. [DN 15]. The Court held a hearing on the matter on October 7, 2019. Thereafter, the United States

submitted a Post-Hearing Brief. [DN 26]. Mr. Thomas responded asserting three separate and distinct grounds upon which the Court may find that his Fourth Amendment rights were violated. [DN 29]. The United States did not reply.

On January 22, 2020, the Court issued a Memorandum Opinion and Order granting Mr. Thomas's Motion to Suppress. [DN 36]. The Court found that the stop—as well as the scope and duration thereof—were legal but that the open container of alcohol did not provide the officers with the requisite probable cause to search the vehicle. In addition, the Court found that the inevitable discovery doctrine did not save the search because of a credibility determination on the issue of whether Detective Mayo smelled marijuana. Thirty days later, on February 21, 2020, the United States filed a Motion for Reconsideration. [DN 43]. Therein, the United States concedes error regarding the vehicle search based on the open container of alcohol. [*Id.* at 5]. The United States asks the Court to reconsider its credibility determination concerning Detective Mayo. In support, the United States submits an investigative report that was apparently prepared by Detective Mayo on the evening of the stop in which he notes a "strong odor of marijuana coming from inside the vehicle." [DN 43-1 at 3]. The report had not been submitted as an exhibit before the United States' Motion. Further, the United States challenges several additional components of the Court's analysis and conclusion. [*Id.* at 9–18].

## II. DISCUSSION

"The Federal Rules of Criminal Procedure make no provision for a motion to reconsider, and courts adjudicating such motions in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to FED. R. CIV. P. 59(e)." *United States v. Jarnigan*, 2008 WL 5248172, at *2 (E.D. Tenn. Dec. 17, 2008); *see also United States v. Abernathy*, 2009 WL 55011 (E.D. Mich. Jan. 7, 2009); *United States v.*

*Titterington*, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003); *United States v. Sims*, 252 F. Supp. 2d 1255, 1260–61 (D. N.M. 2003); *United States v. Thompson*, 125 F. Supp. 2d 1297, 1300 (D. Kan. 2000). "Such motions may be made for one of three reasons: (1) An intervening change of controlling law; (2) Evidence not previously available has become available; or (3) It is necessary to correct a clear error of law or prevent manifest injustice." *Jarnigan*, 2008 WL 5248172, at *2 (citing FED. R. CIV. P. 59(e); *Helton v. ACS Group*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)); *see also GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Rule 59(e) is not intended to be used to "'relitigate issues previously considered' or to 'submit evidence which in the exercise of reasonable diligence, could have been submitted before.'" *Abernathy*, 2009 WL 55011, at *1 (citation omitted); *see also Electric Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007) ("Such motions are not an opportunity for the losing party to offer additional arguments in support of its position."). Motions to alter or amend a judgment pursuant to Rule 59(e) "are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. April 19, 2007).

In response to the United States' Motion for Reconsideration, Mr. Thomas first argues that the motion is untimely and, thus, the Court lacks jurisdiction to consider it. [DN 46 at 1–3]. Mr. Thomas bases this argument on FED. R. CIV. P. 59(e)'s time stricture—specifically, that such motions "must be filed no later than 28 days after the entry of the judgment." Referring to the timeline, Mr. Thomas explains that the deadline for filing a motion to reconsider the Court's January 22, 2020, Order was February 19, 2020. [DN 46 at 3]. However, the United States filed the instant Motion on February 21, 2020. [*Id.*]. The United States replies that its Motion is timely as it was filed within the 30-day timeframe allowed under 18 U.S.C. § 3731 and FED. R. APP. P. 4(b)(1)(B). [DN 48 at 2]. Indeed, a Sixth Circuit decision addressing the timeliness of a

motion for reconsideration in a criminal matter affirms the United States' position. *United States v. Correa-Gomez*, 328 F.3d 297 (6th Cir. 2003). *Correa-Gomez* provides that "a motion for reconsideration . . . in a criminal case must be filed within the period provided by FED. R. APP. P. 4(b)(1) unless the local rules of the district court provide otherwise." *Id.* at 299. "Effectively," the court explains, "the government must file such motions within thirty days." *Id.* (citing FED. R. APP. P. 4(b)(1)(B)(i)). Accordingly, the United States' Motion is timely.

As his second basis for opposing the Motion, Mr. Thomas argues the United States has no valid reason under FED. R. CIV. P. 59(e) for the Court to alter its judgment. [DN 46 at 3–6]. More particularly, Mr. Thomas contends that the United States presents no newly discovered evidence to this Court. [*Id.*]. The United States' reply skirts the issue and instead argues that the Federal Rules of Civil Procedure are not applicable in criminal cases and that the Court enjoys wide discretion in reviewing a motion to reconsider. [DN 48 at 2–4]. Further, the United States argues that reconsideration of the credibility issue is warranted in this case because of the consequences Detective Mayo will face attendant to a conclusion that his testimony was not credible. [*Id.* at 4].

Despite the United States' protestations to the contrary, it is well settled in this Circuit that motions to reconsider in criminal cases are analyzed under the same standard—FED. R. CIV. P. 59(e)—as civil motions. As stated above, motions for reconsideration may only be made for one of a few reasons. *See United States v. Jarnigan*, 2008 WL 5248172, at *2 (E.D. Tenn. Dec. 17, 2008) (citing FED. R. CIV. P. 59(e); *Helton v. ACS Group*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)); *see also GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). In this case, the United States asks the Court to reconsider its order granting Mr. Thomas's motion to suppress based on the existence of an investigative report as well as disagreements

5

with the Court's analysis and conclusion. [DN 43]. As to the investigative report, although the United States failed to submit the report as evidence relevant to the motion to suppress, it was not due to its unavailability. *See GenCorp, Inc.*, 178 F.3d at 834 (finding that in order to qualify as newly discovered evidence, "the evidence must have been previously unavailable"). As it happens, the report was apparently prepared on the evening of the stop and has been in the possession of the United States during the pendency of this case. The United States' explanation for failing to submit the report as evidence was that it had "no way to anticipate that what was written [regarding the smell of marijuana], and when, would be significant." [DN 43 at 7]. Unfortunately for the United States, a failure to realize what evidence would be important is not a sufficient justification for allowing a motion to reconsider. And as to the United States' disagreements with the Court's analysis and conclusion, a motion to reconsider is not a proper tool for relitigating issues already decided. On this basis alone, the Court could deny the United States' Motion. Nevertheless, even as a substantive matter, the United States' Motion fails.

One of the reasons the Court did not credit Detective Mayo's suppression hearing testimony was that the arrest citation did not mention that the smell of unburnt marijuana was detected in the vehicle. However, the fact that Detective Mayo's investigative report states that he noted a strong odor of marijuana coming from inside the vehicle does not cause the Court to re-think its decision. In reaching its decision, the Court relied more on the body camera footage, and after additional review of the footage, the Court stands by the conclusions included in the prior Memorandum Opinion and Order.

The first thing the Court notes is Detective Mayo's interaction with Detective Flynn. After Detective Flynn approached the passenger area of the vehicle and spoke with both of Mr. Thomas's passengers, he walked toward the back of the vehicle. Detective Mayo asks Detective

Flynn, "anything good?" [Mayo Body Camera Footage starting at 1:20]. In response, Detective Flynn says maybe and waves his hand as if to say "so-so." The United States makes light of the fact that Detective Mayo asked a general question but did not ask whether Detective Flynn *smelled* anything good. The Court agrees but does not believe this changes the calculus. Detective Mayo's vague question opened the door for Detective Flynn to answer that he smelled marijuana when he approached the vehicle. That is what the Court finds significant—the fact that no other officer at the scene mentions smelling marijuana despite Detective Mayo's probing.

The next noteworthy interaction is between Detectives Mayo, Robbins, and Flynn. About a minute and a half after asking Detective Flynn if there was "anything good," Detective Mayo approached Detectives Robbins and Flynn at the patrol car. Detective Mayo asked whether either officer got "a whiff of anything." [Flynn's Body Camera Footage starting at 4:02]. While the United States contends that neither Detective Robbins nor Detective Flynn responded to this question, a close look at Detective Flynn's body camera footage reveals that this is incorrect. It is clear to the Court that in response to Detective Mayo's question, Detective Flynn shook his head from side-to-side, indicating a negative response. [*Id.* at 4:04]. Detective Robbins does not appear to answer this question one way or another. But, yet again, an officer was given an opportunity to indicate smelling marijuana in the vehicle and does not do so.

Moving on, the Court turns to Detective Mayo's interaction with Sergeant Kevin Casper. A few minutes after Detective Mayo's conversation with Detectives Robbins and Flynn, while still standing at the rear of Mr. Thomas's vehicle, Sergeant Casper walks towards Detective Mayo. Sergeant Casper had been talking to the occupants of the vehicle, standing by the front passenger's window. Detective Mayo says to him, "are you getting any good scents in there?" [Mayo's Body Camera Footage starting at 5:24]. Sergeant Casper responds, "do what?" [*Id.*].

7

Detective Mayo asks again, "any good scents in there?" to which Sergeant Casper responds, "not really." [*Id.*]. The United States spends a considerable amount of time arguing that Detective Mayo is not saying "scents" but is instead saying "sense." The Court does not buy it. However, even if that were the case, once again Detective Mayo is trying to figure out what his fellow officers are experiencing. At this point, he has questioned three separate officers about the situation currently unfolding and not one of them indicates having smelled marijuana.

The Court notes the United States' argument that "some officers' failure to smell marijuana doesn't mean that another officer couldn't." [DN 43 at 15]. While true, when viewed in conjunction with the other evidence discussed below, the Court finds that the absence of additional officers affirming the scent of marijuana is relevant.

Detective Mayo's own actions, as viewed on his body camera footage, further contradict his testimony. At around 6:24 on Detective Mayo's body camera footage, he approaches Mr. Thomas who is seated in the driver's seat of the vehicle and begins a discussion about Mr. Thomas stepping out of the vehicle. [*Id.* starting at 6:24]. After Mr. Thomas steps out of the vehicle and follows Detective Mayo to the rear area, around 9:00 minutes in, Detective Mayo explains why he got Mr. Thomas out of the car. Detective Mayo explained that his fellow officers were double checking that a warrant for Mr. Thomas was non-extraditable. Detective Mayo told Mr. Thomas that his was pretty sure Mr. Thomas was "going to be straight," but they just needed to check. At this point, if Detective Mayo had smelled marijuana while talking to Mr. Thomas at the window he would have had no reason to say as much to Mr. Thomas. The United States would likely argue that Detective Mayo was just trying to keep the situation as calm as possible, but at that point the officers had the situation under control. All three occupants were standing calmly at the rear of the vehicle with Detective Mayo having just patted down Mr. Thomas in an

effort to locate any weapons. Next, Detective Mayo asks Mr. Thomas if he can have consent to search the vehicle for any guns. [*Id.* at 10:18]. Again, at this point, if Detective Mayo had smelled marijuana, he would not need consent to search the vehicle. The Court understands that officers will quite often ask for consent even when consent is not needed. But in this case, once Mr. Thomas declines Detective Mayo's request, instead of declaring that he had smelled marijuana and he had grounds to search the vehicle without Mr. Thomas's consent, Detective Mayo walks toward the driver's side door where he sees two fellow officers searching the vehicle. Detective Mayo asks whether they saw something that gave them reason to search, to which an officer responds that they found an open container. [*Id.* at 10:50]. Why, at this point, would Detective Mayo not have told his fellow officers that he had smelled marijuana? But he does not, and at no point during the remainder of the body camera footage does Detective Mayo mention smelling marijuana.

The Court also relied on Lieutenant King's testimony at the suppression hearing. Having been the individual who was rummaging around in the backseat—and who found the bag of marijuana in the motorcycle vest—Lieutenant King was in a position well-suited to smell marijuana. The United States claims that Detective Mayo was "in the best position to smell marijuana," having talked at length with Mr. Thomas at the car door. It is certainly true that Detective Mayo was in a position to smell marijuana, but Lieutenant King was in an equally "good" position. [DN 43 at 9, 15]. Yet, he testified at the suppression hearing that smelling the scent of marijuana during the stop and subsequent search was not something that stood out to him. [DN 24 at 81:24–82:4]. The United States argues that this testimony is tantamount to "I don't recall" or "I don't remember." [DN 43 at 15]. The Court does not disagree but finds that

such an answer provides additional support—even if only marginal—for the conclusions reached by the Court in this case

Relying on the above evidence, the Court did not credit Detective Mayo's testimony and concluded that the officers on scene and searching Mr. Thomas's vehicle would not have inevitably discovered the firearm. Finding that the officers' error rose to the level articulated by the Supreme Court in *Herring v. United States*, 555 U.S. 135, 144 (2009), the Court concluded that the firearm must be excluded. The Court stands by that decision.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the United States' Motion to Reconsider the Court's January 22, 2020, Order granting Defendant's Motion to Suppress [DN 43] is **DENIED**.

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

June 25, 2020

cc:     counsel of record